```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  08/09/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KELLY DAVIS,                                              :
                                                         :
                    Plaintiff,                           :          **OPINION &**
                                                         :          **ORDER**
                    -against-                             :
                                                         :          22-CV-6333 (JLC)
KILOLO KIJAKAZI,[1]                                      :
Acting Commissioner of Social Security,                  :
                                                         :
                    Defendant.                           :
-------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Kelly Davis seeks judicial review of a final determination by Kilolo Kijakazi,

the Acting Commissioner of the Social Security Administration, denying her

application for disability insurance benefits under the Social Security Act.  The

parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of

the Federal Rules of Civil Procedure.  For the reasons set forth below, Davis's

motion is denied, the Commissioner's cross-motion is granted, and the case is

dismissed.

## I. BACKGROUND

### A.  Procedural History

Davis filed an application for disability insurance benefits ("DIB") on May 28,

2020, alleging that date as her onset date.  Administrative Record ("AR"), Dkt. No.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the Social Security
Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kiolo Kijakazi is substituted as the defendant in this action.

11, at 13.[2]  The Social Security Administration ("SSA") denied Davis's claim on August 4, 2020 and again upon reconsideration on May 4, 2021.  *Id.*  She subsequently requested a hearing before an Administrative Law Judge ("ALJ") on May 14, 2021.  *Id.*  On August 12, 2021, Davis, represented by counsel, appeared by telephone and testified before ALJ Dennis G. Katz.  *Id.* at 13, 81.[3]  In a decision dated August 25, 2021, the ALJ found Davis not disabled and denied her claim.  *Id.* at 25.  Davis sought review of the ALJ's decision by the Appeals Council, which denied Davis's request on May 26, 2022.  *Id.* at 1–3.

Davis timely commenced this action on July 26, 2022, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Complaint, Dkt. No. 1.  The Commissioner answered Davis's complaint by filing the administrative record on December 19, 2022.  Dkt. No. 11.  On February 16, 2023, Davis moved for judgment on the pleadings and submitted a memorandum of law in support of her motion.  Motion for Judgment on the Pleadings, Dkt. No. 12; Memorandum of Law in Support of the Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem."), Dkt. No. 13.  The Commissioner cross-moved for judgment on the pleadings on April 17, 2023, and submitted a memorandum in support of the cross-motion.  Notice of

---

[2] The page numbers refer to the sequential numbering of the Administrative Record provided on the bottom right corner of the page, not the numbers produced by the Electronic Case Filing ("ECF") System.

[3] The ALJ hearing transcript notes that Davis, her counsel, and the vocational expert appeared at the hearing in person.  AR at 83.  This appears to be incorrect as the ALJ himself observed that the hearing was being conducted by telephone, *id.*, and notes in the decision that all participants agreed to conduct the hearing by telephone due to the COVID-19 pandemic.  *See id.* at 86.

Cross-Motion for Judgment on the Pleadings, Dkt. No. 14; Memorandum of Law in

Support of Commissioner's Cross-Motion for Judgment on the Pleadings and in

Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Def. Mem."), Dkt.

No. 15.  On May 1, 2023, Davis submitted reply papers.  Reply Brief ("Pl. Reply"),

Dkt. No. 16.

### B.  The Administrative Record

#### 1.  Davis's Background

Davis was born on May 17, 1963, AR at 24, in Corey, Pennsylvania.  *Id.* at

649.  She presently resides in Middletown, New York.  *Id.* at 1.  At the time of the

hearing, she was 57 years old.  *Id.* at 24.  She graduated from high school, *id.* at

649, and, prior to her alleged onset date, worked as a nurse for more than 30 years

in different roles, "primarily . . . in the neonatal intensive care unit."  *Id.* at 91.

Davis stopped working on May 28, 2020, *id.* at 14, due to pain in her feet, ankles,

and bladder, *id.* at 99, stemming from her idiopathic progressive neuropathy,

systemic lupus erythematosus, obesity, fibromyalgia, urinary incontinence, and

degenerative disc disease of the lumbar spine.  *Id.* at 16.

#### 2.  Relevant Medical Evidence

Davis has provided a summary of the medical evidence contained in the

administrative record.  *See* Pl. Mem. at 2–4.  The Commissioner has also provided a

summary of the medical evidence contained in the administrative record.  *See* Def.

Mem. at 2–3.  "The Court adopts these summaries, which do not materially conflict

with each other, as accurate and complete for the purpose of considering the issues

3

raised in this suit, except to the extent we discuss additional records below."
*Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 210 (S.D.N.Y. 2017).  The
Court will discuss the medical evidence pertinent to this case in Section II.B.

### 3.  ALJ Hearing

The hearing was held in White Plains, New York, on August 12, 2021.  AR at
81.  Davis appeared by teleconference from the Law Office of Sobo & Sobo,
represented by her attorney, Nicole Thompson ("Thompson").  *Id.* at 86.  Vocational
Expert ("VE") Andrew Vaughn also attended by telephone.  *Id.* at 83.

### a.  Davis's Testimony

The ALJ first questioned Davis about monetary payments she received in
2021, which Davis explained were retroactive pay from a bargaining agreement
with her union and the City of New York.  *Id.* at 90.  Davis then explained that she
stopped working in May 2020 because she thought her inability to fulfill her nurse
assignments without the help of her coworkers was unsafe.  *Id.* at 91.  For instance,
she "couldn't stand on [her] feet" and her "groin pain . . . was so excruciating" that
she "just couldn't function."  *Id.*  She added that her retirement eligibility also
influenced her decision to stop working.  *Id.* at 92–93.

Davis testified that her impairments began at a young age and her swollen
joints worsened over time.  *Id.* at 93.  In 2017, she lost the ability to swallow after
discovering a lump in her throat.  *Id.* at 93–94.  In May 2017, her feet began to
swell, forcing her to seek medical attention.  *Id.* at 94.  Tests for blood clots in the
feet or legs came back negative, but blood was found in her urine.  *Id.*  She

experienced a "severe crippling and stinging in [her] feet" and a "stabbing" pain in "the back" of her feet when she "put socks on." *Id.* at 95.

The ALJ asked Davis if such pain made it difficult to walk and stand. *Id.* Davis responded that basic tasks became so difficult that she sought out medical assistance from Dr. Goddard Lainjo, a rheumatologist. *Id.* at 96. After running tests, Dr. Lainjo diagnosed Davis with systemic lupus. *Id.* As a treatment, Dr. Lainjo prescribed Neurontin, hydroxychloroquine, and a steroid. *Id.* According to Davis, the treatment alleviated some of her symptoms, but she discontinued the steroid after experiencing extreme weight gain. *Id.* As her condition progressed, the numbness in her feet caused her to trip, and her constant urination severely interfered with her work. *Id.*

The ALJ asked how frequently Davis needed to urinate. *Id.* at 97. Davis answered that she would need to use the restroom "every 15 minutes throughout the night," greatly disrupting her sleep, and that during the day, she would have to urinate approximately once every hour. *Id.* She also explained that her urination problem was unresponsive to medication. *Id.* at 97–98.

Thompson, Davis's counsel, then asked Davis about various mobility difficulties in her everyday life. *Id.* at 98–99. Davis shared that because the "numbness in [her] toes" makes her "a little unbalanced," she goes "up and down stairs very slowly," "turn[s] sideways" and uses a handrail to prevent herself from falling. *Id.* at 98. She can usually shower, dress, and use the toilet by herself, but has difficulty bending down to dress herself and sits on a chair while in the shower.

5

*Id.* at 101–02.  Davis testified that she can buy her own groceries, perform light cleaning when she does not have to bend, and can cook small meals that do not require prolonged time on her feet.  *Id.* at 102–03.  She "can make [her] bed" but has to stop "halfway through" because her "bed has to be made a certain way."  *Id.* at 102.

Davis also testified that she wakes up in pain, mostly in her feet and bladder, and ranked the pain as low as an eight out of ten in the morning before medication.  *Id.* at 99.  After medication, her pain "go[es] down to a four or a five," but if she attempts to bend over, a "shooting . . . and stabbing pain" emanates from her bladder.  *Id.*

Davis explained that she can typically walk "500 steps in the morning," but any more activity causes tingling and requires her to take a break.  *Id.* at 98–99.  Such aggravated pain also comes from "standing in one spot for . . . 10 to 15 minutes" and when she "sit[s] flat" or upright on a chair.  *Id.* at 100.  To mitigate discomfort, Davis sits on one side of the chair and then shifts to the other side, and the amount of time before she has to stand up "varies" depending on whether she feels joint pain.  *Id.* 100–01.  Davis also shared that she can usually lie down on her side without much pain, *id.* at 100, and that she can lift and carry between 10 and 12 pounds.  *Id.* at 101.

Thompson asked Davis whether she has "any difficulty with concentration or focus."  *Id.* at 103.  Davis responded that the Neurontin has made it "very hard to focus," "has affected [her] memory," and that her prescribed "extra antidepressants"

have caused her to "sleep[] most of the time." *Id.*

### b. VE's Testimony

The ALJ then questioned the VE, who testified that Davis's past relevant work as a registered nurse was highly skilled, medium work (Dictionary of Occupational Titles ("D.O.T.") 0.75.364-010) and that her work as a clinical nurse in a neonatal intensive care unit was highly skilled, light work (D.O.T. 0.75.264-010). *Id.* at 104–05. The ALJ then asked the VE if "there [were] any sedentary jobs to which a person with these skills could perform at the sedentary level, based on transferable skills[.]" *Id.* at 105. The VE responded by asking Davis if she ever admitted patients, did outpatient work, or checked patient records. *Id.* Davis responded that she admitted patients. *Id.* at 105–06. The VE then responded that Davis's skills with

> data entry, entering accurate medical information, . . . receiving and dissemination of accurate medical information, and the customer service, patient care . . . will transfer readily that minimal vocational adjustment to [(1)] outpatient receptionist, . . . sedentary, SVP of 4, and approximately 665,300 jobs[, and (2)] hospital admitting clerk, . . . sedentary, SVP of 4, and approximately 63,500 jobs for the DOT estimates in the national economy.

*Id.* at 106.

Thompson then posed a hypothetical to the VE based on a report filed by Dr. Jerome Greenberg, Davis's chiropractor: whether Davis would be disqualified from the two aforementioned positions if she could only walk for five to 10 minutes at a time and only stand for 20 to 30 minutes. *Id.* at 109. The VE responded that she

7

would not because those "are sedentary positions and the essential tasks are performed sitting." *Id.* Thompson interjected that, according to Dr. Greenberg's report, Davis could not sit for "six out of eight hours in a day." *Id.* The VE responded that such a hindrance would not prevent her from performing those jobs because, for instance:

> for the hospital admitting clerk, . . . in New York, you go to the hospital and the hospital's admitting clerk typically would be at counter height setting where they can either sit or stand to perform the task of the job. So . . . not being able to sit six hours would not eliminate the job that I had mentioned.

*Id.* at 110.

Thompson then proposed different hypotheticals to the VE based on Davis's neuropathy—(1) in which the individual is off task more than 15 percent of the time, and (2) in which the individual is off task more than 10 percent of the time. *Id.* The VE responded that if her pain and neuropathy took her off task more than 15 percent of the time, it would eliminate the sedentary jobs, but 10 percent would not. *Id.* Similarly, Thompson asked if the number of jobs open to Davis would be affected if she had to request both a sit and stand accommodation for working because of her neurogenic bladder. *Id.* at 111. The VE responded it would "reduce" the estimates he provided but he did not know "to what extent." *Id.* Then the ALJ posed a hypothetical to the VE that incorporated Davis's bladder impairment. *Id.* at 112. The VE responded that a five minute restroom break did not disqualify Davis from either of the sedentary positions. *Id.*

As the ALJ concluded the hearing, Thompson remarked that "under the listing for peripheral neuropathy, [Davis] should be found disabled under [Listing] 11.14," which would prevent her from working at the jobs that the VE identified. *Id.* at 112–13.  The ALJ acknowledged the statement and said he would take it into consideration.  *Id.* at 113.  Davis then further explained the constant pain she experiences because of her impairments.  *Id.*  She also testified that she felt "insulted" by the suggestion that she should become an admitting clerk while she served as a nurse through COVID-19.  *Id.* at 114.

### 4.  The ALJ's Decision

The ALJ denied Davis's application on August 25, 2021 after concluding that Davis was "not disabled under sections 216(i) and 223(d) of the Social Security Act" from May 28, 2020, the alleged onset date, through the date of the decision.  *Id.* at 25.

To reach his decision, the ALJ followed the five-step test set forth in the SSA regulations.  *Id.* at 16–25.  First, he determined that Davis met "the insured status requirements of the Social Security Act through December 31, 2025" and that she had "not engaged in substantial gainful activity" since her alleged onset date.  *Id.* at 16.  At step two, the ALJ found that Davis has the "severe impairments" of "idiopathic progressive neuropathy; systemic lupus erythematosus; obesity; fibromyalgia; urinary incontinence and degenerative disc disease of the lumbar spine."  *Id.*

At step three, the ALJ found that Davis "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526)." *Id.* at 18.  Specifically, the ALJ considered Listings 11.14 (neuropathy), 14.02 (lupus), 1.15 (spinal impairment), and 1.16 (lumbar spinal stenosis).  *Id.* at 18–19.

The ALJ then assessed Davis's Residual Functional Capacity ("RFC"), *id.* at 20–23, and determined that Davis's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  *Id.* at 21.  The ALJ concluded that Davis

> has the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b) except that she must take a restroom break of about 5 minutes approximately once an hour during the work day, but these breaks can be accommodated during the regular break allowed by the employer during [the] work day and during the lunch break.

*Id.* at 20.  In coming to this conclusion, the ALJ considered Davis's testimony from the hearing and medical records and evaluations from: Cornwall Neurology, Crystal Run Healthcare, Dr. John T. Hughes, Dr. Goddard Lainjo, Horizon Family Medical, Dr. Jerome Greenberg, Dr. R. Abueg, Dr. Peter L. Lee, and Dr. R. Reynolds.  *Id.* at 20–23.[4]  The ALJ further provided an analysis of why he found specific medical opinions more persuasive than others, *id.*, and noted that his determination was

---

[4] The ALJ incorrectly spelled Dr. Abueg's name as "Auberg" in his decision.

supported by "the repeated normal physical examination findings and the opinions of the state agency examiners" and "conservative nature of care prescribed." *Id.* at 23.

At step four, the ALJ concluded that Davis was "capable of performing past relevant work as a pediatric clinical nurse," *id.*, and that she "has acquired work skills from past relevant work" to perform sedentary jobs including administrative tasks. *Id.* at 24.  The ALJ then proposed that Davis can make "a successful adjustment to other [sedentary] work" if she is unable to return to her past relevant work. *Id.* at 24–25.  The ALJ concluded that based on Davis's "residual functional capacity, age, education, and work experience," she could still perform jobs such as an outpatient receptionist and hospital admitting clerk, which exist in significant numbers in the national economy. *Id.*  Accordingly, the ALJ determined that Davis was not disabled. *Id.* at 25.

## II. DISCUSSION

### A.  Legal Standards

#### 1.  Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides."  42 U.S.C. § 405(g).  The district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  "Substantial evidence is more than a mere scintilla.  It

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (cleaned up); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (cleaned up). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (emphasis omitted) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722

F.2d 1033, 1038 (2d Cir. 1983)).  On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing."  42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence."  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (alteration in original) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).

### 2.  Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022).  Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough

inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" *Mongeur*, 722 F.2d at 1037 (quoting *Gold v. Sec'y of Health, Educ., & Welfare*, 463 F.2d 38, 41 (2d Cir. 1972)).  Specifically, the Commissioner's decision must consider factors such as: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Id.* (internal citations omitted).

### a. Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 404.1520(a)(4).  First, the Commissioner must establish whether the claimant is presently employed.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is unemployed, the Commissioner goes to the second step and determines whether the claimant has a "severe" impairment restricting his or her ability to work.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant has such an impairment, the Commissioner moves to the third step and considers whether the medical severity of the impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is considered disabled.  *Id.*; 20 C.F.R. § 404.1520(d).

If the claimant's impairment does not meet or equal a listed impairment,
then the Commissioner continues to the fourth step and determines whether the
claimant has the RFC to perform his or her past relevant work.  20 C.F.R.
§ 404.1520(a)(4)(iv).  Finally, if the claimant does not have the RFC to perform past
relevant work, the Commissioner completes the fifth step and ascertains whether
the claimant possesses the ability to perform any other work.  20 C.F.R.
§ 404.1520(a)(4)(v).

The claimant has the burden at the first four steps.  *Burgess v. Astrue*, 537
F.3d 117, 128 (2d Cir. 2008).  If the claimant is successful, the burden shifts to the
Commissioner at the fifth and final step, where the Commissioner must establish
that the claimant has the ability to perform some work in the national
economy.  *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b.  Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial."  *Sims
v. Apfel*, 530 U.S. 103, 110–11 (2000).  Consequently, "the social security ALJ,
unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop
the record in light of the essentially non-adversarial nature of a benefits
proceeding."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation
marks omitted).  As part of this duty, the ALJ must "investigate the facts and
develop the arguments both for and against granting benefits."  *Sims*, 530 U.S. at
111.  Specifically, under the applicable regulations, the ALJ is required to develop a
claimant's complete medical history.  20 C.F.R. § 404.1512(b); *see also Pratts*, 94

F.3d at 37.  This responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity."  *Pena v. Astrue*, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (internal citations omitted).

Whether the ALJ has satisfied this duty to develop the record is a threshold question.  Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record."  *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Hum. Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law." (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999))).  The ALJ must develop the record even where the claimant has legal counsel.  *See, e.g., Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Remand is appropriate where this duty is not discharged.  *See, e.g., Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

### c. Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted).  For SSI and Social Security Disability Insurance applications filed prior to March 27, 2017, SSA regulations set forth the "treating physician rule," which required an ALJ to give more weight to the opinions of physicians with the most significant clinical relationship with the plaintiff.  20 C.F.R. §§ 404.1527(c)(2), 416.927(d)(2); *see also, e.g.*, *Taylor v. Barnhart*, 117 F. App'x 139, 140 (2d Cir. 2004).  Under the treating physician rule, an ALJ was required to give "good reasons," 20 C.F.R. § 404.1527(c)(2), if he determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources.  *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 588 (S.D.N.Y. 2000).  In addition, a consultative physician's opinion was generally entitled to "little weight."  *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009).

However, in January 2017, the SSA revised its regulations regarding the evaluation of medical opinions for claims filed on or after March 27, 2017 (such as Davis's claim in this case).  *See* REVISIONS TO THE RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017).  "In implementing new regulations, the SSA has apparently sought to move away from a

perceived hierarchy of medical sources." *Velasquez v. Kijakazi*, No. 19-CV-9303

(DF) 2021 WL 4392986, at *19 (S.D.N.Y. Sept. 24, 2021) (citing 82 Fed. Reg. 5844

(Jn. 18, 2017)).  The new regulations state that an ALJ need "not defer or give any

specific evidentiary weight, including controlling weight, to any medical opinion(s)

or prior administrative medical finding(s), including those from [a claimant's]

medical sources." *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 416.1520c(a)).  "Instead,

an ALJ is to consider all medical opinions in the record and 'evaluate their

persuasiveness' based on the following five 'factors': (1) supportability, (2)

consistency, (3) relationship with the claimant, (4) specialization, and (5) any 'other'

factor that 'tend[s] to support or contradict a medical opinion.'" *Id.* (quoting 20

C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c)).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's

duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)–(b),

416 920c(a)–(b).  Under the new regulations, the ALJ must "explain how he

considered" both the supportability and consistency factors, as they are "the most

important factors."  20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2); *see also, e.g., Russ

v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 160 (S.D.N.Y. 2022) ("[t]he new

regulations give most importance to two of the same factors previously considered to

determine whether a treating doctor's opinion should be given controlling weight,"

referring to the supportability and consistency factors).  Evaluating "supportability

is an inquiry geared toward assessing how well a medical source supported and

explained their opinion(s)." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502

(KMW) (KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021), *adopted by* 2022 WL 717612 (Mar. 10, 2022).  With regard to consistency, "the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)); *see generally* 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base decision on "all the evidence available in the [record]").

Additionally, under the new regulations, the ALJ is required to consider, but need not explicitly discuss, the three remaining factors (relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion).  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[W]hen the opinions offered by two or more medical sources about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, the ALJ [should] articulate how he considered the remaining factors in evaluating the opinions."  *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (internal quotation marks removed).

Courts considering the application of the new regulations have concluded that "the factors are very similar to the analysis under the old [treating physician] rule." *Velasquez*, 2021 WL 4392986, at *20 (quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); *see also Acosta Cuevas*, 2021 WL 363682, at *9 (collecting cases) ("[T]he essence of the rule remains the same, and the factors to be considered

in weighing the various medical opinions in a given claimant's medical history are substantially similar."). "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned." *Acosta Cuevas*, 2021 WL 363682, at *9; *see also, e.g., Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) ("consistency and supportability" were foundation of treating physician rule).

"The failure to properly consider and apply" supportability and consistency "is grounds for remand." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021); *see also Rosario v. Comm'r of Soc. Sec.*, No. 20-CV-7749 (SLC), 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022) ("ALJ must explain in all cases how [he or she] considered" supportability and consistency); *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *adopted by* 2021 WL 134945 (Jan. 14, 2021) (remanding so the ALJ can "explicitly discuss both the supportability and consistency of the consulting examiners' opinions"). "An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). However, the Court need not remand the case if the ALJ only committed harmless error, *i.e.*, where the "application of the correct legal principles to the record could lead only to

the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration

omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### d. Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to

deference by a reviewing court. *Osorio v. Barnhart*, No. 04-CV-7515 (DLC), 2006

WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "[A]s with any finding of fact, '[i]f the

Secretary's findings are supported by substantial evidence, the court must uphold

the ALJ's decision to discount a claimant's subjective complaints." *Id.* (quoting

*Aponte v. Sec'y of Health and Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Still,

an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to

permit intelligible plenary review of the record." *Pena*, 2008 WL 5111317, at *10

(internal quotation marks omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–

61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of

the objective medical evidence and other evidence regarding the true extent of the

alleged symptoms.'" *Id.* (*quoting Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir.

1984)).

SSA regulations provide that statements of subjective pain and other

symptoms alone cannot establish a disability. *Genier v. Astrue*, 606 F.3d 46, 49 (2d

Cir. 2010) (citing 20 C.F.R. § 404.1529(a)). The ALJ must follow a two-step

framework for evaluating allegations of pain and other limitations. *Id.* First, the

ALJ considers whether the claimant suffers from a "medically determinable

impairment that could reasonably be expected to produce" the symptoms

alleged.  *Id.* (citing 20 C.F.R. § 404.1529(b)).  "If the claimant does suffer from such

an impairment, at the second step, the ALJ must consider 'the extent to which [the

claimant's] symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence' of record."  *Id.* (citing 20 C.F.R.

§404.1529(a)).  Among the kinds of evidence that the ALJ must consider (in addition

to objective medical evidence) are:

> 1. Daily activities; 2. [t]he location, duration, frequency,
> and intensity of pain or other symptoms; 3. [f]actors that
> precipitate and aggravate the symptoms; 4. [t]he type,
> dosage, effectiveness, and side effects of any medication
> an individual takes or has taken to alleviate pain or other
> symptoms; 5. [t]reatment, other than medication, an
> individual receives or has received for relief of pain or
> other symptoms; 6. [a]ny measures other than treatment
> an individual uses or has used to relieve pain or other
> symptoms (*e.g.,* lying flat on his or her back, standing for
> 15 to 20 minutes every hour, or sleeping on a board); and
> 7. [a]ny other factors concerning an individual's functional
> limitations and restrictions due to pain or other
> symptoms.

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *7–8 (S.S.A. Oct. 25,

2017); *see also Pena*, 2008 WL 5111317, at *11.

### B. Analysis

Davis argues that this case should be remanded because the ALJ

(1) incorrectly defined her past relevant work, and (2) improperly assessed the

medical opinions in the record.  Pl. Mem. at 5–6.  Each argument is addressed in

turn.

### 1.  The ALJ Properly Considered Davis's Past Relevant Work

Davis's first argument raises two separate issues: whether the VE improperly conflated Davis's position as a registered nurse with the definition of a clinical nurse; and whether the VE's testimony was impermissibly vague.

### a.  The VE Properly Considered Davis's Past Work as a Registered Nurse

Davis argues that the VE improperly considered her work as a clinical nurse, a position that she held more than 15 years prior to the date that she applied for disability.  *See* Pl. Mem. at 5; *see also* 20 C.F.R. § 404.1565(a) (the ALJ "do[es] not usually consider . . . work" done 15 years prior).  However, this argument is misplaced because, as the Commissioner observes, the VE's inquiry "was clearly referring to the pediatric nurse position" that Davis held "until 2020."  Def. Mem. at 11.

At the hearing, the VE provided two DOT listings: "registered nurse, [DOT] 0.75.364-010" and "clinical nurse, neonatal, intensive care, [DOT] 0.75.264-010." AR at 104.  Then the VE asked Davis: "as a registered nurse, . . . did you . . . have to . . . check patient records[,] . . . [c]heck patients into their wards[,] or check patients into the hospital?"  *Id.* at 105.  Davis responded that she did.  *Id.* at 106–07.  There was no mention of Davis's clinical nurse position from more than 15 years prior at the hearing or in the ALJ's decision.  Nonetheless, according to Davis, the VE's consideration of the skills of "receiving and disseminat[ing] accurate medical information and customer service/patient care," which "are more consistent with Plaintiff's description of the clinical nurse job than with the registered nurse job," is

evidence that the VE improperly considered her past clinical nurse position.  Pl.

Mem. at 5.

Remand is warranted where there is an "apparent conflict" between the job

description that the VE relied on and the DOT description that he should have

used.  *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019).

"Under this SSR, a 'conflict' exists between the testimony of a VE and the DOT

when the two disagree in categorizing and describing the requirements of the job as

performed in the national economy."  *Salati v. Saul*, 415 F. Supp. 3d 433, 448

(S.D.N.Y. 2019) (quoting *Smith v. Colvin*, No. 16-CV-51, 2017 WL 281736, at *8 (D.

Vt. Jan. 23, 2017)).  However, a court is unable to determine whether a conflict

exists if the claimant "does not identify any."  *Id.*  That is what occurred here.

In *Smith,* because the claimant did "not identif[y] a conflict between the VE's

testimony and the DOT [description]," the court concluded that any error was "at

most harmless."  2017 WL 281736, at *8.  Likewise here, the VE referred to two

DOT listings that were applicable to Davis's registered nurse position, *see* AR at

104, and Davis has not pointed to a conflict between the VE's testimony and either

description, nor did she identify a different DOT listing that the VE should have

used instead.

Notably, the skills that the VE questioned Davis about—"check[ing] patient

records[,] . . . [c]heck[ing] patients into their wards[, and] check[ing] patients into

the hospital," *id.* at 105—are not in "apparent conflict" with DOT 0.75.364-010

(registered nurse), which includes: "[o]bserv[ing] patient[s], record[ing] significant

conditions and reactions, . . . notif[ying] supervisor of . . . patient's conditions . . . [and] rotat[ing] among various clinical services of institution, such as . . . outpatient and admitting," and which the VE explicitly consulted at the hearing. *Id.* at 104–05.  Thus, remand is not warranted on this ground.

### b. The VE's Testimony Was Legally Permissible

Davis also argues (without citation to case law) that the VE's testimony was "insufficiently clear" to allow the ALJ to depend on it to define Davis's transferrable skills.  Pl. Mem. at 5–6.  As a threshold matter, the Commissioner contends that Davis makes this argument "in such a cursory, undeveloped manner as to be deemed waived."  Def. Mem. at 11.   Davis does not respond to this argument on reply.  Nevertheless, the Court will, "in the interest of justice," address Davis's contention.  *Hilton v. Kijakazi*, 602 F. Supp. 3d 558, 571 (S.D.N.Y. 2022) (court considered argument on lack of substantial evidence even though claimant failed to develop it).

SSR 82-41 provides that "[w]hen a finding is made that a claimant had transferable skills, [those] skills must be identified, and specific occupations to which [those] skills are transferable" must be provided in the ALJ decision.  1982 WL 31389, at *7 (Jan. 1, 1982).  In *Clark v. Berryhill,* the Second Circuit concluded that "the ALJ did not comply with [SSR] 82-41" because he failed to "identify the skills that [the claimant] acquired or how those skills transfer to the jobs identified by the [VE]."  697 F. App'x 49, 51–52 (2d Cir. 2017).  The VE in *Clark* "provided several job titles without identifying Clark's acquired vocational skills."  *Id.* at 51.

Here, unlike in *Clark,* the VE specifically noted transferable skills Davis acquired in her past relevant work as a pediatric nurse: "data entry; entering accurate medical information, receiving and disseminat[ing ] accurate medical information, customer service, [and] patient care."  AR at 106.

The law is clear that if the VE provides testimony with answers to hypotheticals based on specifications in the claimant's RFC, then that testimony can be relied upon for the sake of determining whether the claimant can perform her past relevant work.  *See, e.g.*, *Hayes v. Berryhill*, No. 16-CV-5259 (KBF), 2017 WL 4326118, at *11 (S.D.N.Y. Sept. 28, 2017) (The "ALJ . . . posed a hypothetical question that mirrored his RFC, which, . . . was supported by substantial evidence.").  As the VE did so here—including by considering Davis's transferable skills, and as Davis has not challenged the RFC itself—remand is not warranted on this basis either.  *See, e.g.*, *Calabrese v. Astrue,* 358 F. App'x 274, 276 (2d Cir. 2009) (claimant failed to dispute RFC and claim of improper reliance on VE testimony otherwise "without merit"); *Flores v. Comm'r of Soc. Sec.,* No. 21-CV-8109 (RWL), 2022 WL 17496235, at *10 (S.D.N.Y. Dec. 8, 2022) ("Having found, and asked the VE to assume, an RFC that [the claimant] does not challenge, the ALJ appropriately relied on the VE's testimony.").

### 2.  The ALJ Properly Discounted Dr. Greenberg's Opinion

Davis next argues that the ALJ improperly discounted the opinion of Dr. Greenberg, a chiropractor, by citing to language from an outdated regulation.  *See*

26

Pl. Mem. at 7.[5]  However, the current regulations applicable to this case provide an exhaustive list of "acceptable medical source[s]," which does not include chiropractors.  *See* 20 C.F.R. § 404.1502(a).[6]  Thus, as Dr. Greenberg is not an acceptable medical source under current or former regulations, no error exists in discounting his opinion.

In any event, the applicable regulations further provide that the ALJ is not required to "articulate how [h]e considered evidence from nonmedical sources" like Dr. Greenberg.  20 C.F.R. § 404.1520c(d).  While an "ALJ *may* consider the opinions of other sources—for example, chiropractors—[he] is not obliged to assign weight or give deference to" them.  *Judea R. v. Comm'r of Soc. Sec.*, No. 20-CV-521 (LJV), 2022 WL 705959, at *2 (W.D.N.Y. Mar. 9, 2022) (emphasis added) (citing SSR 06-03P, 2006 WL 2329939 at *2 (Aug. 9, 2009)).  Thus, the ALJ properly chose not to defer to Dr. Greenberg's opinion.  *See e.g.*, *Cherry v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 658, 661 (2d Cir. 2020) (ALJ properly "discounted" nurse practitioner's medical opinion because it was not from acceptable medical source).

---

[5] Specifically, the ALJ observed that Dr. Greenberg is not an "acceptable medical source."  AR at 22.  Davis argues that this language comes from a superseded regulation, 20 C.F.R. § 404.1527(e), which was applicable to claims filed before March 27, 2017.  However, the "[a]cceptable medical source" language also appears in the current regulations applicable to this case.  *See* 20 C.F.R. § 404.1502(a) (effective March 27, 2017).

[6] The list includes "[l]icensed physician (medical or osteopathic doctor),"  § 404.1502(a)(1), and chiropractors are not physicians.  *See, e.g., Diaz*, 59 F.3d at 313.

### 3.  The ALJ Adequately Evaluated Dr. R. Abueg's Opinion

SSA regulations require the ALJ to explicitly discuss the supportability and consistency of each medical opinion in making the RFC determination, and the failure to do so constitutes legal error.  *See, e.g., Acosta-Cuevas*, 2021 WL 363682, at *14 (regulations "require an ALJ to explain how persuasive she found the medical opinions she considered, and specifically, how well a medical source supports their own opinion(s) and how consistent a medical source/opinion is with the medical evidence as a whole"); *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *25 (S.D.N.Y. Sept. 24, 2021) (ALJ committed legal error by, *inter alia*, failing to articulate supportability and consistency factors); *see also* 20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency.").  Davis contends that the ALJ failed to adequately explain the supportability and consistency factors with respect to state agency consultative physician Dr. R. Abueg's opinion.  *See* Pl. Mem. at 8.  The adequacy of the ALJ's analysis for each is discussed in turn.

First, "supportability, under the new regulations, has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support [their] opinion."  *Rivera*, 2020 WL 8167136, at *16 (cleaned up).  In his decision, the ALJ explained that Dr. Abueg's opinion—that Davis was "unable to perform even sedentary work"—was "not supported by clinical examination findings or the claimant's treatment history" because, "[f]or example, there [was] no evidence of impairments of the upper

extremities which would support such extreme lifting and carrying limitations." AR at 23.

Dr. Abueg's notes explained that Davis's limitations were due to symptoms that included "vibration and light touch in both lower extremities." *Id.* at 122. Dr. Abueg noted that it was "possible" that this was because Davis is "not sure where she is placing her feet when walking." *Id.* The Commissioner contends that the ALJ's supportability explanation was adequate because it referred to "clinical examination findings" and "treatment history" broadly and referred to the "lack of upper body limitations as an 'example' of Dr. Abueg's opinion's inconsistency with the other evidence of record." Def. Mem. at 17.

"[T]he ALJ is required to 'explain'" the supportability factor "beyond a conclusory sentence or two." *Loni S. v. Comm'r of Soc. Sec.*, No. 22-CV-805 (CFH), 2023 WL 4195887, at *20 (N.D.N.Y. June 27, 2023). For instance, an ALJ's sole statement that a medical "opinion [is] 'supported by the findings'" without any mention of "how she assessed the opinion," is legally inadequate. *Dezarea v. Comm'r of Soc. Sec.*, No. 21-CV-1138 (MAD) (TWD), 2023 WL 1960528, at *9 (N.D.N.Y. Feb. 13, 2023) (emphasis omitted). On the other hand, in *Davis v. Commissioner,* the ALJ's explanation that a medical provider had offered no medical findings to support his opinion that the claimant had "extreme limitations" was deemed to be adequate. No. 20-CV-5773 (SDA), 2021 WL 5826369, at *10–11 (S.D.N.Y. Dec. 8, 2021).

Here, the ALJ's assessment of Dr. Abueg's opinion goes beyond the analysis in *Davis*, as he not only explained that there were no medical findings to support the opinion, but provided, as an example, that there was a lack of "evidence of impairments of the upper extremities which would support extreme lifting and carrying limitations." AR at 23.

Davis's contention that the ALJ misrepresented Dr. Abueg's opinion is without merit. Davis insinuates that the ALJ incorrectly referred to Dr. Abueg's reliance on "upper extremity issues," Pl. Mem. at 8, but the ALJ actually noted a *lack* of "evidence of impairments of the upper extremities." *Id.* at 23. Moreover, not only did the ALJ cite to Dr. Abueg's medical opinion, he analyzed the same medical evidence elsewhere in the opinion—namely "no drift of the outstretched upper extremities" and normal "[s]egmental power in upper and lower extremities," *id.* at 124—but concluded that it did not support Dr. Abueg's opinion. *See id.* at 23. Thus, the ALJ adequately analyzed the medical evidence in the record vis-à-vis Dr. Abueg's opinion and disagreed with it. This was permissible.

Regarding consistency, the ALJ noted that Dr. Abueg's opinion was inconsistent with those of Drs. Lee and Reynolds, state agency consultants who each concluded that Davis "was able to perform a range of light work activity." *Id.* The ALJ specified that Dr. Lee "found no medical basis for [Davis's] alleged onset date and . . . that [her] hypertension, lupus, diabetes, HIV and obesity were not severe impairments." *Id.* He also observed that Dr. Reynolds had "opined that [Davis] was able to perform a range light work activity, including standing and

walking up to 6 hours."  *Id.*

The ALJ is obligated to "weigh the conflicting evidence in the record," *Hall v. Comm'r of Soc. Sec.*, No. 19-CV-5138 (RPK), 2023 WL 3389763, at *4 (E.D.N.Y. May 11, 2023) (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)), and he did so here.  He noted that the state agency consultative physicians' opinions—those of Drs. Abueg, Lee, and Reynolds—were all "of limited persuasiveness because" they "did not actually examine [Davis] and did not have the opportunity to review the evidence that was available at the hearing level."  AR at 23.  The ALJ concluded that Dr. Lee's and Dr. Reynolds's opinions could nevertheless "be viewed as essentially consistent with the RFC."  *Id.*

Davis argues that "Dr. Lee's opinion [was] not meaningful evidence for" the ALJ to consider in the consistency analysis because he had also "opined [a] non-severe impairment . . . that contradicted . . . the ALJ's own finding of severe impairments."  Pl. Mem. at 8.  According to Davis, Dr. Lee's opinion was "squarely at odds with the ALJ's decision."  Pl. Reply at 3.  However, the ALJ is not prohibited from considering the consistency of an opinion that he ultimately disagrees with, *see, e.g. Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), and here, the ALJ "clearly articulated his reasons for assigning little weight to" Dr. Abueg's opinion. *Judea R.*, 2022 WL 705959, at *4.

Moreover, when there is a conflict in the medical opinion record, the Court "defer[s] to the Commissioner's resolution of conflicting evidence[] and reject[s] the ALJ's findings only if a reasonable factfinder *would have to conclude otherwise*." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (cleaned up). Here, the ALJ considered that there was no change to Davis's conditions before and after her alleged onset date, which was consistent with Dr. Lee's conclusion that there was "no medical basis for" her onset date. AR at 23. Furthermore, considering the ALJ's explanation of the lack of supportability of Dr. Abueg's opinion and the fact that he is a state agency consultant who did not examine Davis himself, along with the fact that Dr. Reynolds's opinion is consistent with medical evidence in the record, a reasonable fact finder could find Dr. Abueg's opinion to be unpersuasive. As "[r]ejecting Dr. [Abueg's] opinion here in favor of contrary evidence was a proper exercise of discretion," *Morris*, 721 F. App'x at 29, remand is not warranted.

### 4. The ALJ Properly Evaluated the Opinion of Dr. R. Reynolds

Davis next argues that the ALJ erred in his analysis of Dr. Reynolds's opinion because he failed to "resolve[]" the "apparent inconsistency between" the registered nurse job description, which requires "lifting of IV pumps and assisting in surgical procedures," and "Dr. Reynolds['s] restriction against even moderate exposures to hazards." Pl. Mem. at 9. The Commissioner counters that the ALJ did not misrepresent Dr. Reynolds's opinion because he "merely noted" that it was "'*essentially* consistent with the RFC,' rather than wholly consistent." Def. Mem. at 18 (emphasis added).

32

In his decision, the ALJ noted, based on Dr. Reynolds's opinion, that Davis "was able to perform a range of light work activity, including standing and walking up to 6 hours," which was "supported by citations to the medical record and [was] consistent with the claimant's conservative care[ and] essentially normal exam findings." AR at 23.  Moreover, the combination of the opinions of Drs. Reynolds and Lee was "essentially consistent with the RFC."  *Id.*

As a preliminary matter, the ALJ did not misrepresent Dr. Reynolds's opinion.  Under 20 C.F.R. § 404.1567(a), light work "involves lifting no more than 20 pounds at a time" and frequently being able to lift or carry 10 pounds in addition to "a good deal of walking or standing."  This classification is consistent with Dr. Reynolds's finding that Davis could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, could stand or walk six out of the eight hours in a workday, and could sit for more than six hours.  AR at 136–37.  Therefore, apart from the ALJ's inclusion of a 5-minute restroom break, *see id.* at 20, Dr. Reynolds's opinion is consistent with the RFC.

Moreover, the ALJ "need not completely adopt any single medical opinion," *Green v. Saul,* No. 18-CV-2857 (JGK) (KHP), 2019 WL 2996502, at *9 (S.D.N.Y. June 19, 2019), "but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence."  *Butler v. Comm'r of Soc. Sec.*, No. 16-CV-500 (TWD), 2017 WL 2834482, at *8 (N.D.N.Y June 29, 2017).  In *Negron v. Saul,* for example, the ALJ properly considered the entirety of a medical opinion, but only chose to adopt portions of it that were "based on substantial evidence in the medical

33

record." No. 19-CV-7547 (KMK) (JCM), 2021 WL 465768, at *18 (S.D.N.Y. Feb. 8, 2021), *adopted by* 2017 WL 1254426 (Apr. 5, 2021). Similarly, the ALJ did not incorporate the portion of Dr. Reynolds's opinion concerning hazardous materials. But because the ALJ considered the entire medical record, his analysis was adequate.

### 5. The VE's Testimony Regarding a Sit-Stand Option is Irrelevant

Lastly, Davis argues that the VE's response to the ALJ's query of how the number of jobs listed for potential sedentary jobs would be affected if Davis "required an optional sit-stand option" was "too vague to be useful." Pl. Mem. at 9. At the hearing, the VE responded that the number of jobs would be reduced, but he "wouldn't be able to tell . . . to what extent." AR at 111. The Commissioner contends that the VE's response was, at any rate, irrelevant to the RFC because "the ALJ did not find a sit/stand option was necessary." Def. Mem. at 18.

Where "the ALJ's RFC d[oes] not contain [a specific] limitation" discussed in the VE's testimony, "that portion of the VE's testimony was not relevant." *Lau v. Comm'r of Soc. Sec.,* 339 F. Supp. 3d 421, 435 (S.D.N.Y. 2018). As a "sit-stand option" was not included in the final RFC, *see* AR at 20, that portion of the testimony is irrelevant, and to the extent it should have been considered, any error is harmless.

\* \* \*

While it is mindful of plaintiff's testimony at the end of the hearing expressing frustration about a lack of understanding of her condition, the Court

cannot substitute its own judgment for that of the Commissioner, even if it might have reached a different result.  Here, for the reasons stated, a careful analysis of all the arguments presented does not justify a remand in this case.

## III. CONCLUSION

For the foregoing reasons, Davis's motion is denied, and the Commissioner's cross-motion is granted.  The Clerk is directed to mark the motion at Docket Number 12 as "denied," the motion at Docket Number 14 as "granted," and enter judgment for the Commissioner.

**SO ORDERED.**

Dated: August 9, 2023
     New York, New York

JAMES L. COTT
United States Magistrate Judge